### Mollie Moore v. The State.

#### No. 268.    Decided May 17, 1911.

**Gaming—Private Residence—Resort for Gaming—Knowledge of Defendant.**

> Where the defendant was charged with wilfully and knowingly permitting her premises to be used for the purposes of gambling and wagering with cards, and that the same was a resort for such purpose, under article 388b, Penal Code, and defendant's evidence showed that the same was her private residence, and that people did not play or resort there for the purpose of gaming, it was reversible error to refuse special instructions submitting this phase of the case. Prendergast, Judge, dissenting.

Appeal from the District Court of Bowie. Tried below before the Hon. P. A. Turner.

Appeal from a conviction of wilfully and knowingly keeping a resort for gaming; penalty, two years imprisonment in the penitentiary.

The opinion states the case.

*John L. Sheppard, Rodgers & Dorough,* for appellant.—On question of charge of court and insufficiency of the evidence: Simons v. State, 56 Texas Crim. Rep., 339, 120 S. W. Rep., 208; Pugh v. State, 55 Texas Crim. Rep., 462, 117 S. W. Rep., 817.

*C. E. Lane,* Assistant Attorney-General, for the State.

DAVIDSON, Presiding Judge.—Appellant was indicted under article 388b, as enacted by the Thirtieth Legislature, p. 108, for keeping and being concerned in keeping and interested in keeping certain prem-

ises and a certain building and house, and a room in the same for the purpose of gaming, and being used as a place to bet and wager and gamble with cards, and with dice, and with dominoes, and the same was then and there used as a place to bet and wager and gamble with cards and with dice and with dominoes, and as a place of resort to bet and wager and gamble with dice, and with cards and with dominoes; and further, that people did then and there resort to said premises and building and room for the purpose of betting and wagering and gambling with dice and with cards and with dominoes, etc. The State's evidence makes it clear that appellant's house was resorted to for the purpose of gaming, and that crowds resorted there for that purpose, and a great many games of dice and cards were played and betting was carried on rather extensively. An officer testified that he raided the place twice and found a crowd each time, arrested several on each occasion, and that more escaped than were arrested. Another witness testified on two occasions she was at said house and saw gambling. Appellant's testimony is directly to the contrary. She introduced evidence also to the effect if gambling was carried on she did not know it. This made the issue sharp. The house was her private residence.

It is insisted that the court erred in the charge given, and in refusal to give certain requested instructions. The court's charge is as follows: "If the jury should believe beyond a reasonable doubt that defendant rented one or more rooms of a house, situated in said Bowie County, Texas, and that by reason of such rental contract defendant had control and possession of said room or rooms, and that she, on or about the 22d day of March, 1909, unlawfully and wilfully and knowingly permitted said room or rooms to be used for the purpose of betting or wagering with cards, or dice, then you will find her guilty." The court further charged that said room or rooms shall be considered as used for the purpose of betting or wagering with cards, or dice, if any fees, money or anything of value is bet thereon, or if the same is resorted to for the purpose of gaming or betting. Appellant asked the court to instruct the jury that, before they could convict, they must believe beyond a reasonable doubt that appellant kept the house for the purpose of gaming or knowingly permitted her house to be used for such purpose, and further, that mere gaming would not constitute her guilt, but they must believe beyond a reasonable doubt from the evidence that the house was commonly resorted to for the purpose of gaming, and if they should not so believe, or if there was a reasonable doubt of such fact, they should acquit. Without repeating the charges refused, they fairly presented appellant's side of the case. We are of opinion that these contentions are well taken. This was appellant's private residence, and her testimony is to the effect that people did not play there, nor resort there for the purpose of playing. This is substantially her side of the case, and it should have been so charged to the jury. The court did not present this matter to the jury, but presented the State's case. Unless people resort to the place for the pur-

pose of gambling and betting, and engaging in such games after resorting there, with her knowledge and consent, it would not come within the inhibition of the statute. Her evidence raised this question, and because the special instruction was not given the judgment will be reversed and the cause remanded, and it is so ordered.

*Reversed and remanded.*

PRENDERGAST, Judge (dissenting).—In this case appellant was indicted and convicted under article 388b of the Act of the Thirtieth Legislature, p. 107. The indictment, after the formal allegations of the proper organization of the grand jury, is as follows:

"That Mollie Moore, late of the County of Bowie, on the 22d day of March in the year of our Lord one thousand nine hundred and nine, with force and arms, in the county of Bowie and State of Texas, did then and there unlawfully and wilfully and knowingly keep and was concerned in keeping and was interested in keeping certain premises and a certain building and house, and room in the same, for the purpose of gaming and for the purpose of being used as a place to bet and wager and gamble with cards, and with dice and with dominoes, and as a place to resort to bet and wager and gamble with dice, and with cards and with dominoes, and people did then and there resort to said premises and building and room for the purpose of betting and wagering and gambling with dice and with cards and with dominoes, and the said Mollie Moore did then and there unlawfully and wilfully and knowingly keep said house and premises and room for the purpose aforesaid, and did unlawfully and wilfully and knowingly permit the aforesaid premises, house and room which were then and there under her control to be so used to gamble and wager and bet with dice, with cards and with dominoes, against the peace and dignity of the State." The court submitted, and the conviction was had under, the last part only of this indictment.

The State introduced five witnesses. Their testimony is at some length. I will not, therefore, undertake to give all of their evidence, but will give such of it as will show clearly the substance of each.

Henry Devenport testified that he had known appellant three years; knew her on March 22, 1909, where she then and now lives. This witness then testified particularly and fully that he gambled at her house with dice and cards at least fifty times from the period of about four months prior and up to March 22, 1909; that at every game that was played by him during this time money was gambled on whatever game was played, either dice or cards; that the appellant herself was present and participated in all of these games; that there was a big crowd there at every time he played; that all present were gambling; that he went every time to gamble and every time he went there he got a game. If he did not find a large crowd there when he first went there would be three or four, and the crowd would soon be there. Appellant would be there running the game and controlling it. The gambling

was in appellant's room, and she was there every time this witness was there, and gambled. As many as fifteen or twenty persons were there during these times, gambling; they were all negro men; this gambling at appellant's house had been going on practically continuously for two years prior to March 22, 1909, the time alleged in the indictment. The room was raided twice by the officers while this witness was gambling there. Some four or five persons were arrested each time, placed in jail, fined, and made to pay fines for gambling at this house.

The house in which appellant's two rooms were, where the gambling was carried on, had four rooms to it—two on either side, one back of each front room; a partition separated the two sets of rooms from each other. The entrance to each was from the ground. In other words, the building itself was divided into two separate compartments, each entering separately from the ground.

The appellant was shown to have this whole house rented and sub-rented the other two rooms not occupied by her to another person. The front of the two rooms occupied by her was her bedroom, the rear her kitchen. Both—and especially the front room—were large rooms. There was no hall in the house. In appellant's bedroom were chairs, a bed, table and a big fireplace.

Mary Devenport testified: Henry Devenport was her husband. She had known the appellant for some nine months to a year before this trial, which occurred in June, 1909; she knew where the appellant lived and where her house was, and identified it. She was at appellant's house twice. She went both times after her husband, said Henry. One of these times was at night and the other in the daytime. She was married to Henry in December, 1908, and both of these times that she went to appellant's house after him, and found him there, was between January 1st and March 22, 1909. Both of these times the appellant was also gambling. At one time she found only about four men there gambling. At the other time there were more. She also went there the third time, just after the officers had raided the place the second time and arrested a large number of persons, among them her husband. She thinks they arrested five or six at that time. The appellant at both times, before this raid, was gambling with the others in her room. Both times the parties were betting money.

Melvin Anderson testified: He was constable of precinct No. 1, in which the city of Texarkana is situated, in Bowie County, in March, 1909. He knew the appellant and where she resided in March and prior thereto. Appellant told this witness that she had this house rented from Davidson, a saloon-keeper. He also testified that the appellant had control of those premises, and that she was conducting a gambling house there. He, with other officers, raided the place twice, once in January, 1909, and the other time about March 22, 1909. He did not arrest the appellant the first raid, but told her that if she did not "cut out" letting negroes gamble there he would arrest her and bring her before the court. At the first raid he had two others with

him. They surrounded the house, and when they knocked on the door for admission the big scramble came off. They ran out over his two assistants and many of the inmates succeeded in escaping. He found therein at that time lots of cards strewed around the room, and some dice. Appellant was trying to hide some dice under the bed. He took them away from her. Some of the parties backed up in the corner and some tried to hide. He got some out from under the bed. Appellant certainly knew these people were gambling there at the time. When he told her if she did not quit letting negroes gamble there he would arrest her she made no reply. In the second raid. he also had assistants with him; that occurred about March 22, 1909. Since the first raid they had built a high fence in the back part of the lot. He was in the rear where this high fence was, and when he got over it the other assistants had knocked on the door and the inmates attempted in every way to escape. They succeeded, however, in arresting six, eight or ten or twelve, and about twice that number succeeded in escaping from them at the time. On this second raid, in attempting to escape, some of them attempted to get out through the chimney, and in that way tore the chimney down. They got one of the parties out of the chimney. In attempting to escape they pushed all of the back of the chimney out and some of them had butted it all down. It was a double fireplace; they were all gambling at that time. He got a half-dozen decks of cards and seven or eight pairs of dice all scattered around there. They were shooting dice on the floor, and were playing cards on a table in the kitchen and on the bed.

Appellant was not a married woman, though she had been married. Her husband was not living with her.

Buck Whetstone testified: He knew the appellant; had known her for a long time, and knew where she lived in March, 1909, and prior thereto, and identified the same house that the other witnesses had identified as where she lived. This witness lived in the country, and was only in Texarkana where this house was occasionally; he was there at the house gambling and drinking beer and having a good time when the officers made the second raid above noted, and was arrested. The appellant was there at that time; at that time there was a large crowd in appellant's room. He, when caught for gambling on this occasion, had been there only a very short time, and the occasion for his going there was to take a water-bucket full of beer and a pint of whiskey, which they were all then drinking. Appellant was also drinking with the others—the beer and whisky. He did not see the appellant gambling on that occasion. He is one of the parties who ran through the chimney at the time the officers made this second raid. He cleaned up the saloon of the saloon-keeper who rented the house to appellant. He was told by the saloon-keeper to go to appellant's and collect fifty cents from her. Instead of doing this he took the beer and whisky there, and was drinking and gambling, as stated, and was arrested.

Ed Dixon testified: He knew the appellant in March, 1902, and for

about two years prior thereto, and identified where she lived and her place the same as the other witnesses had done, and located the house over behind Davidson's saloon. He gambled with cards and dice shortly prior to March 22, 1909. One time the appellant was there and the other time he thought she was not. He was in the kitchen betting and she was in the other room. He also threw dice there and bet on dice once just prior to Christmas, 1908. When he was gambling there were four or five others there also. They were already there when he got there and were gambling—shooting dice and betting. He was not there when the second raid was made and they were arrested, but he saw them. The house was a kind of apartment house, a little negro house, with one roof over it. The appellant stayed in one side and a woman named Elsie on the other side. The other woman had children.

Above I have given substantially the testimony of the State. The appellant introduced two witnesses besides herself. One was the woman Elsie above spoken of and named Elsie Dordan. She testified in substance that she was the woman who lived in the other side of the house from that lived in by appellant. That it was her private residence. She lived in that house from November 18, 1908, until March 22, 1909. She rented the part of the house she occupied from the appellant and the appellant rented the whole of it from Davidson, the saloon-keeper. She says: "I do not know whether the crowds congregated and gambling and betting on cards and dice were carried on in the room occupied by Mollie Moore while I have been there; I never did see that; I have got a baby. I stayed at home all the time then, because he was real young. Mollie washes and irons for a living. I live right next door to her. If Mollie run a gambling house it was more than I knew of." On cross-examination she testified: "I left there on March 22d, because they had done tore the chimney down and I could not keep any fire; I had a young baby. I was not running a gambling house. I do not know anything about gambling— do not know one card from another." This witness also disputed the State's witness Henry Devenport, he swearing that he did not state to her that he was going to swear out a case against appellant, and she swearing that he told her he was. In describing this house she also says that there was no opening in the partition separating her two rooms from appellant's two rooms, but that each had a big front door and each a back door to their kitchen. The appellant herself testified that she did not run any gambling house; that she washed and ironed for a living, and for white people, naming one such. She says: "I had white people's clothes in my house when I got arrested. I did not know that crowds congregated at my house and shot craps and played dice. I did not know that they played cards at my house. The first time they raided my house I was in Pink Hardeman's room. There was not a crowd of niggers in my room. I just had come from Sunset and never had been in my room. I did not tell any of those niggers

to come to my house and have a game. The first time they raided was at night. When they made the raid in March, when they knocked on the door we was drinking beer. Lige Devenport bought the beer. I do not know how much they bought—$1.10 or $1.15—a ·bucket larger than that one. I could not tell you exactly how many of us was there, but four or five of us. I was scared. They had raided the place once before. When I heard they were out there I was afraid." On cross-examination she testified that she was not drinking beer the first time her house was raided, because she was not in her room. There was not any gambling going on there that she knew of. "I do not know what they all run off for. They was going out through the chimney, some of them, when I came from the kitchen. . . . I do not know how far I lived from a saloon. I do not know what made all of those fellows get scared. I was not sitting down with them; I was in the kitchen. I was drinking beer, but what they were doing in their part I do not know." She denied that the constable ever said anything to her about quitting running a gambling house. She then shows in effect that the house she had rented was about thirty feet back of a saloon; that she did not rent it at that place to be handy to the beer, but simply because it was a house for rent. "I do not know how came so many men there the night the officers raided me. . . . There was not a dozen men there that night. . . . I had a husband, but I did not know where he was. I do not know how many men were in there that night; I was not in there. They were just sitting around there, I reckon. . . . I have been married; I have not got a divorce from my husband. We are still man and wife. That residence that I had rented was the only home I had." Reintroduced, she testified: "I am a colored woman. There were no white people in my house at the time of the raid; they were all black."

The only other witness. introduced was the jailor, Tom Watlington, who testified that he was then jailor of that county and that appellant had been in his custody about two months. Had been cooking during those two months.

1. The court charged the jury, after giving the style, number, etc., of the case, and the address to the jury, as follows:

"In this case the defendant has pleaded not guilty. I charge you the following, as the law applicable to this case. If you believe from the evidence, beyond a reasonable doubt, that the defendant, Mollie Moore, in Bowie County, Texas, on or about the 22d day of March, 1909, rented one or more rooms of a house, situated in said Bowie County, Texas, and that by reason of such rental contract defendant had control and possession of said room or rooms, and that she, on or about the 22d day of March, 1909, unlawfully, wilfully and knowingly permitted said room or rooms to be used for the purpose of betting or wagering with cards or dice, then you will find defendant guilty, as charged, and assess her punishment at confinement in the penitentiary for not less than two nor more than four years. Said room or rooms

shall be considered as used for the purpose of betting or wagering with cards or dice if any fees, money, or anything of value is bet thereon, or if the same is resorted to for the purpose of gaming or betting.

"In all criminal cases the burden of proof is on the State.

"The defendant is presumed to be innocent until her guilt is established by legal evidence, beyond a reasonable doubt; and in case you have a reasonable doubt as to the defendant's guilt you will acquit her, and say by your verdict, 'Not guilty.'

"You are the exclusive judges of the facts proved, of the credibility of the witnesses and of the weight to be given to the testimony, but you are bound to receive the law from the court, which is herein given you, and be governed thereby."

The appellant complains that the court erred in refusing to give her special charge, which is as follows:

"You are charged, at the instance of the defendant, that if you find from the evidence that guests at the defendant's house engaged in gaming for pleasure, and to spend their time, and that said house was not resorted to as a gaming house, or if you have a reasonable doubt as to such fact, then you will acquit the defendant."

The court did not err in refusing to give this charge, because the evidence raised no such question as was attempted to be submitted thereby. The evidence of the State, without question, showed in effect that gambling had been carried on in appellant's house continuously for months, was a common resort for gamblers and gaming, and she not only permitted it, but herself gambled, too. There is no intimation anywhere from the testimony that the parties were "guests at her house, gaming for pleasure and to spend their time," but they were there for gambling only, and when this special charge says, "the said house was not resorted to as a gaming house," it is directly contrary to practically all of the testimony. The effect of the testimony of the other woman, appellant's witness, who was in the other part of the house, simply was that she did not know if gambling was carried on there in appellant's rooms; that she had not seen it and knew nothing of it if it had been done. The testimony of appellant herself was simply and solely to deny that any gambling at any time had been carried on in her house by herself or anyone else, or that she had permitted it. From this testimony it is perfectly clear and unquestionable that her testimony and the testimony of her witness was false and was not believed by the jury, and should not have been believed by the jury, in the face of the other testimony, the whole of it.

2. Again, appellant complains that the court erred in refusing to give her only other requested charge, which was as follows:

"You are charged, at the instance of the defendant, that before you can convict the defendant you must believe beyond a reasonable doubt that she kept a house for the purpose of gaming, or knowingly permitted her house to be used for the purpose of gaming.

"In this connection you are charged that the mere gaming would

not constitute defendant's guilt, but you must believe beyond a reasonable doubt from the evidence that it was a house commonly resorted to for the purpose of gaming.

"In case you do not so believe, from the evidence, that said house was commonly resorted to for the purpose of gaming, or if you have a reasonable doubt as to such fact, you will acquit the defendant." The first part of this charge was clearly, in substance, given in the court's charge. It is in a little different language, but is in effect the same as the court had already given. Hence it was not error to refuse to give this same charge. So the next paragraph of this charge, or rather that part which was proper to give, had unquestionably been given in substance in the court's charge. The last clause of this charge had also been given in the main charge of the court. In the first part of the main charge, in submitting the case to the jury, the court tells them, "If you believe from the evidence, beyond a reasonable doubt," thereby requiring the jury to believe the other requisites in the charge as denounced by the law and as shown by all the testimony, before they could convict. And again, in the court's charge on the presumption of innocence, the next to the last paragraph, the court tells the jury not only that the defendant is presumed to be innocent until her guilt is established by legal evidence beyond a reasonable doubt, but he also tells them, "And in case you have a reasonable doubt as to the defendant's guilt you will acquit her, and say by your verdict, 'Not guilty.'"

Besides this, even if there was any technical error in the court refusing to give this special charge, article 723, Code Criminal Procedure, forbids this court to reverse the case unless the error in refusing such charge was calculated to injure the rights of the defendant. In my opinion the evidence in this case, without doubt, shows that the appellant was not injured by the refusal of the court to give this charge, even if there was any point in it which was not covered by the court's main charge.

In the case of Floeckinger v. State, 45 Texas Crim. Rep., 199, which was a case against a party under article 379 of the Penal Code for playing cards at his residence, commonly resorted to for the purpose of gaming, the appellant contended that the evidence failed to show that the private residence of the party where the gaming occurred was commonly resorted to for the purpose of gaming. This court, by Judge Henderson, said: "We have carefully examined the evidence, and it shows there were a number of games played at said residence, extending from a space of time from the 1st of January until the 1st of July, 1902. The witnesses say they know of six or eight times when they went to this residence and engaged in games of cards for money. Both on account of the number of parties engaged in such games, as well as the number of games played, and the space of time over which these games extended, there was unquestionably sufficient evidence to raise the issue as to whether said private residence was

commonly resorted to for the purpose of gaming; and the evidence was ample to authorize the finding that it was commonly resorted to for the purpose of gaming. Wheelock v. State, 15 Texas, 257."

Again, in the case of Herrin v. State, 50 Texas Crim. Rep., 351, the contention was made that the evidence in that case did not show that the residence where the gaming occurred was commonly resorted to for that purpose. Judge Davidson, for this court in that case, on this point said: "It (the evidence) shows there were three or four games played in which five or six parties indulged in appellant's residence, where he and his family resided, and in the dining-room of said residence; that these games occurred shortly after the holidays. The two witnesses testifying to those facts participated. We believe that under the authorities this is sufficient evidence to show that it was a common resort for gambling. Wheelock v. State, 15 Texas, 257; State v. Norton, 19 Texas, 102; Lynn v. State, 27 Texas Crim. App., 590; Hopkins v. State, 33 S. W. Rep., 975; Floeckinger v. State, 45 Texas Crim. Rep., 199." The statute under that article, discussed by both of these decisions, was the same in effect, so far as the residence being resorted to for gaming purposes, as the article under which this prosecution was had. In those cases the parties who gambled were charged with the offense of gaming at a residence which was a common resort for that purpose. In this case the appellant was indicted for permitting gaming at her house, which is contended to be her private residence. Conceding, of which there is some doubt, that it might be considered her private residence, here the testimony shows by numerous witnesses that her house was unquestionably, whether a residence or not, commonly resorted to for gambling for several months continuously prior to the time laid in the indictment. One of the witnesses testified that he himself had been engaged in gambling at this house at least fifty times during these months. This was corroborated by two raids within the same time by the officers, in which they caught a large number of persons gambling, and still corroborated by at least three other witnesses at other times within the same space. All of this testimony shows that the appellant was present, participating in the gambling, and in charge and control of it in effect every time, except one witness says that he did not see her present, and she probably was not there at one particular time when he was there. The testimony of appellant's only witness, the woman who was in the other part of the house, is simply and solely to the effect that if gambling was carried on in that room she did not know about it. The effect of the testimony of appellant herself was simply and solely to deny that there was any gambling or congregation of persons for that purpose at her home at any time, or that she permitted gambling there.

Again, this court, in the case of Simons v. State, 56 Texas Crim. Rep., 339, which was a case under another article of the gambling statute which made it an offense to unlawfully permit a game of cards played at a house under appellant's control, the charge being the game

was played at a private residence occupied by a family, which was commonly resorted to for that purpose, and in which the contention was made that the evidence did not sustain the conviction, because it was a private residence, and that the appellant could not be convicted therefor at all. In that case this court, quoting the same portion of the opinion in the case of Herrin v. State, 50 Texas Crim. Rep., 351, which is quoted above, approved the same, and then takes up the testimony in that case, which is nothing like as strong, and the gambling shown not to have been anything like as many times and as continuous as in this case, and says: "We think this evidence shows, beyond any sort of doubt, that appellant had substantially converted his residence into a gambling establishment, and that same was to all intents and purposes, under the law, a gaming house. See Thorp v. State, 42 Texas Crim. Rep., 231. To hold otherwise, in the face of this record, would permit the statute against gaming to be nullified on the ground that it was sheltered beneath the roof of a private residence. The fact that it is a private residence, if devoted to gambling, can make no difference." Then the opinion in that case shows the indicia of a gambling establishment, some, but not all, of which were shown to be in this case, and concludes that portion of the opinion as follows: "We think the conviction is well sustained by the evidence, and that no other verdict, if this had been the only count submitted, could in fairness, or ought in honesty, to have been returned by the jury."

I believe that in this case no other verdict could properly, and none other should have been, rendered than that the appellant was guilty. The testimony of the appellant and her witness amounts to no more than a plea of not guilty or a denial of guilt. The overwhelming testimony for the State shows conclusively, as stated above, that if this was her private residence she had converted it into a gambling house of the worst kind, and that it was a common resort for gambling and was resorted to practically continuously day and night for months before and up to the time fixed in the indictment, March 22, 1909, and I can not get my consent that this case should be reversed. There is no error pointed out, in my opinion, that would justify the reversal of this case.

I believe that this case should be affirmed, and respectfully dissent from the opinion of the court in reversing and remanding it.