## GRAY v. STATE.

### No. 14528.

Court of Civil Appeals of Texas. Fort Worth.

May 21, 1943.

Rehearing Denied June 25, 1943.

McDonald & Anderson, of Wichita Falls, for appellant.

Elmer H. Parish, Dist. Atty., and W. Taz Locke, Asst. Dist. Atty., both of Wichita Falls, for appellee.

SPEER, Justice.

This is an action by the State of Texas for an order of the district court to have certain alleged gambling paraphernalia destroyed, as the property of Wilson N. Gray.

Upon hearing, the order was made by the court, and Gray has perfected this appeal.

The articles in controversy consist of seven slot machines, seized by the sheriff under a search warrant, on January 29, 1943. The return of the officer filed with the court describes the machines by number, the place of seizure, and shows that they were taken from the posssession of two named persons, neither of whom is the appellant here. No question is raised about the sufficiency of the search warrant, its return, nor as to the possession of the persons named. The persons from whose possession the equipment was said to have been taken filed disclaimers, and appellant, with permission of the court, intervened in the action and alleged his ownership and possession, and the trial was had upon that basis.

The judgment which orders the destruction of the equipment is attacked upon several grounds; they are, substantially, as follows: (1) The uncontradicted testimony shows that the room where the machines were stored at the time of their seizure was not a gaming house under the statute; (2) there is no evidence tending to show that appellant was keeping or exhibiting said machines for the purpose of obtaining bettors; and (3) there is no evidence tending to show that said machines were being used or exhibited at the time of seizure for the purpose of obtaining bettors.

Penal Code, Article 625, provides, substantially: If any person shall keep, or be in any manner interested in keeping, any premises, building, room or place for the purpose of being used as a place to bet or wager, or to gamble with cards, dice or dominoes, or keep or exhibit for the purpose of gaming, any bank, table machine or device whatsoever, or as a place where people resort to gamble, bet or wager upon anything whatever, he shall be confined in the penitentiary for a prescribed number of years. "Any place or device shall be considered as used for gaming or to gamble with or for betting or wagering, if any money or anything of value is bet thereon, or if the same is resorted to for the purpose of gaming or betting."

Penal Code, Article 619, in effect, provides: If any person shall directly or through an agent, keep or exhibit for the purpose of gaming any slot machine or device of any name or description, he shall be punished as therein provided.

Article 625, P.C., provides, substantially, that the word "exhibit" signifies the act of displaying the bank or game (or slot machine) for the purpose of obtaining bettors.

Under the provisions of Articles 632 and 633, P.C., the search warrant may be applied for by the officer and it may be issued by a magistrate to whom application has been made. The warrant authorizes the officer to enter and search the place, room or building described, "and in the event the same is a gaming house, as defined in this chapter, * * * to take possession of any gambling paraphernalia, device or equipment found therein * * *."

By Article 634, P.C., 'the existence of any gambling house or gambling paraphernalia, and all equipment of such gambling house are declared to be against public policy and a public nuisance.

Article ·636, P.C. provides, among other things, that it is the duty of the peace officer to whom the search warrant is issued (under Art. 633; P.C.) to "take into his possession all gaming tables, devices and other equipments or paraphernalia of gambling houses, the existence of which has come to his knowledge", and immediately to file with the justice of the peace, county judge or district judge a written list of the property seized, the owner of the same, or the name of the person from whose possession it was taken.

Article 637, P.C., Vernon's Ann.P.C. art. 637, provides, in effect, that, if, upon a hearing by the court before whom the report of the peace officer is pending, such judge or other magistrate "shall determine that the property seized is a gaming table or bank or is used as equipment or paraphernalia for a gambling house, and was being used for gaming purposes, he shall order same to be destroyed * * *." Sect. 1.

Section 3 provides, in part, that if upon a hearing by the judge before whom it is pending, it should be found that "the property (slot machines) seized is a gaming table, bank or gambling paraphernalia and equipment per se, or * * * if the Judge shall determine that the same, or any part thereof, was in fact used as equipment or paraphernalia for a gambling house or was being used for gaming purposes * * *", the court may declare the property confiscated and order it destroyed.

At the outset we may safely assume that the statute uses the words "gaming" and "gambling" interchangeably and that "gam-

ing house" and "gambling house" are synonymous.

The controlling question for us to determine is whether or not the court legally condemned the slot machines in question and ordered their destruction. Of necessity the issue found its way to the court by authority of the issuance of a search warrant under Article 632, P.C., and its execution by the sheriff under Art. 633, P.C. By the last article the officer was authorized to enter the premises described, "and in the event the same is a gaming house,. as defined in this chapter * * * to take possession of any gambling paraphernalia, device or equipment found therein * * *."

The pertinent question then arises: Was the house, building or place entered by the sheriff, by virtue of the warrant, a gaming house, as defined in the chapter referred to? Unless the premises were such as to constitute a gaming or gambling house, under the law, the sheriff had no right, under the warrant, "to take possession of any gambling paraphernalia", etc., found therein. We must look to Art. 625, P.C., for such definition as we have of a gaming or gambling house. Paraphrased in simple language, that article, in effect, says that a person will be deemed to be keeping a gambling house if:

1. He keeps any building, room or place for the purpose of being used as a place to bet or wager on any table, bank or other device whether enumerated therein or not, and whether or not such game has a name, or,

2. If he keeps or exhibits for the purpose of gaming, any bank, table, machine or device of any character whatsoever, or,

3. If he keeps a place where people resort to gamble, bet or wager.

The slot machines were seized by the sheriff, evidently upon the theory that he found them in a gaming house; we assume this because under the law that is the only place where he could seize them under the search warrant. Art. 632, P.C. Appellant was unquestionably the owner of the machines and, under the testimony before the court, he was justified in finding that they were gambling devices per se. But even so, it is not a criminal offense to own and possess such articles, so long as they do not become the instrumentalities of an offense named in the law. The offense in this respect is found in Art. 619, P.C. (and to a limited extent in Art. 625), and the penalty in each is other than the confiscation of the gambling device. The offense under those articles is to "keep or exhibit" such articles or equipment *for the purpose of gaming*. Let us see if appellant was keeping or exhibiting the slot machines for the purpose of gambling. In the early history of our jurisprudence the Supreme Court heard appeals in criminal cases. The Penal Code, then as now, provided that it was an offense for a person to "keep·or exhibit" gaming devices for the purpose of gambling. In Wolz v. State, 33 Tex. 331, 335, the court said: "The word 'gaming,' has two significations, one of which refers to what is illegal, and the other to what is legal and proper." Further discussing the words "keep" and "exhibit" the court gave the meaning of "exhibit" the same as defined by our present Code Art. 623, viz.: It signifies the act of displaying the bank or game for the purpose of obtaining bettors. The court then holds that "keep" or "keeping" means, holding in readiness a table, bank or other device, for the purpose of obtaining bettors.

In Hill v. State, 143 Tex.Cr.R. 412, 158 S.W.2d 810, defendant was convicted of "keeping and exhibiting" a policy game. The evidence was found sufficient to support the conviction, and in discussing the word "keep", in connection with the charge, the court said:. "The word, 'Keep' as used' in the statute, Art. 619, P.C., carries with it the meaning that he (defendant) conducted, carried on, maintained or managed such game; that he exercised control and direction over same. See Words and Phrases, Permanent Edition, vol. 23, pp. 498 and 499, and cases there cited."

Another phase of the case is involved in that part of Art. 625, P.C., which makes a house, room or place a gaming house if people resort there for the purpose of gambling. In Moore v. State, 62 Tex.Cr. R. 326, 137 S.W. 690, 691, the defendant was convicted of keeping a gambling house, based upon the allegation that people resorted there for the purpose of gambling. Judgment was reversed on the charge of the court, and the rule was there announced that to sustain a conviction it must be shown that people did resort at defendant's place for the purpose of gambling and betting, and engaged in such games after resorting there, *"with her knowledge and consent"*. (Emphasis ours.)

In the old case of Whitney v. State, 10 Tex.App. 377, defendant was convicted of

"keeping a table or bank", such as is prohibited by the Code, and it was shown that the "table" so kept was an ordinary table kept in the rear end of a saloon where it was accessible for use in playing dominoes for amusement, having no special equipment or significance other than an ordinary table; but it was shown that defendant played dice games thereon upon the occasion in question, and while it was said defendant may have violated the gaming law against gambling at a dice game, he was not guilty of "keeping a table or bank", in violation of another article of the Code.

■ The testimony upon which the court condemned the equipment and ordered its destruction, when considered, as it must be, in its most favorable light in support of the judgment, was substantially as follows: The seven slot machines were the property of appellant; on the date they were seized, they were in a small room, 8 by 10 feet, on the 12th floor of the Hamilton Building in the City of Wichita Falls, in which room they had been placed on the day before the seizure (it is not shown who placed them there); in the same room there was an iron safe, a table and perhaps two chairs; the machines were on metal stands, the stands and machines being about five feet high; the backs of the machines were toward the wall and were not too close together to prevent the use of the levers. The Town Club, an organization made up of members of business and professional people, occupied quarters on the 12th floor of the Hamilton Building. Messrs. Hyatt and Featherstone were joint operators of the Town Club. (Whether the small room in which the slot machines were found was a part of the premises occupied by the Town Club is not disclosed.) Mrs. Newlin, an employee of the Club, testified that on the forenoon of the date of seizure, the door of the little room was locked because she tried to enter and could not, that she had lunch at the Club and in the afternoon saw the "colored boy" come out of the little room and observed that the door did not lock, and she went in there to play the slot machines; that she did not have the consent of either appellant or any one else to go in there; that she had seen some machines carried into the room the day before and knew they were there; she had seen the slot machines in the Club Room but did not know just when; she had played the machines in the little room once or twice before but no one else knew about it. This witness was asked about a conversation with Mr. Hyatt, and upon objection by the State it was excluded by the court; however, the record discloses that for purposes of a bill of exception she answered. It is difficult to tell what part was admitted and what part excluded. It appears that she had asked Mr. Hyatt for some change with which to play the slot machines, Hyatt refused it and told her appellant had locked that door and no one was allowed in there. It is probable that this testimony was excluded. Mrs. Newlin further testified that when she went in the little room she began playing the 25-cent machine, shortly after she went in there the officers came and she went out immediately but had won $15.00 on the machine.

A deputy sheriff testified that he went to the Town Club and asked Mr. Hyatt if they had any slot machines and he replied that there were some in this small room; the officer and Hyatt went to the room and Hyatt started to unlock it when he found it unlocked, and they entered and found Mrs. Newlin playing the machine; the officer said she put in a coin, pulled a lever and coins fell out, then she played another machine for a minute or two and left. The deputy sheriff did not take the machines at that time, but an attorney was called by Hyatt and upon his arrival the attorney forbade the seizure without a search warrant; pretty soon the sheriff came to the place with a search warrant, and Hyatt gave him a key and he entered the room and seized the machines, listed them and made return to the district court. His return does not indicate the amount of money in either machine but he testified they all had jackpots and money in each "jackpot"; he testified they all had the same general appearance and that they were slot machines. A representative of the State Comptroller's office testified that he came to the small room with appellant during the forenoon of the date of seizure; that the appellant unlocked the door and gave the witness a list of the machines and paid a license tax on each, amounting in all to $360; that after the seizure, at the request of appellant, witness refunded the license money. Appellant's counsel asked the witness if appellant didn't state to him that he expected to place the machines on exhibition for use the following night at the "President's Birthday Ball", and upon objection the witness did not answer, except in perfection of a bill of exception; witness was asked the

same question by the State, he answered in the affirmative,, and upon objection by appellant, the question and answer were withdrawn. The testimony discloses that there were at least two keys to the room in which the machines were seized, one with appellant and another with Mr. Hyatt, one of the managers of the Town Club.

The court found, as recited by the judgment, that the seven machines were owned by appellant, "and that they are slot machines and gaming devices per se and that they were being exhibited in Wichita County, Texas, for the purpose of obtaining bettors at the time of their seizure by the said Harvey F. Hawkins (sheriff) and that they should be destroyed".

As above indicated, the sheriff could not legally seize the slot machines by virtue of the search warrant, unless they were found by him in a gaming house, as defined in the chapter; and, as stated in Art. 636, P.C., the officer is authorized under the search warrant to "take into his possession all gaming tables, devices and other equipments or paraphernalia of *gambling houses,* the existence of which has come to his knowledge". (Emphasis ours.)

The return of the officer does not indicate that he seized the machines in a gaming or gambling house; nor do we find any evidence whatever that the articles ordered destroyed were seized in a gaming house. Of course, there is an implied finding by the court of all facts in support of the judgment; we are convinced that the testimony in this case not only fails to show that appellant was keeping a gaming house, but that it is refuted by the undisputed testimony. The court found that the machines were gambling paraphernalia per se, yet they were only before him for disposition by virtue of the seizure under the search warrant, and unless they were seized in a gaming house, as defined by law, we hold the court erred in the order to destroy them.

Let us suppose the sheriff had procured a search warrant from some magistrate and through it he found gambling devices stored in appellant's attic or basement, places from which the public was excluded by lock and key or otherwise; and if such equipment had been returned into court and the facts made known to the court, could it be said that because the equipment seized was gambling paraphernalia per se that the court could order it destroyed? We think not. It is true that Art. 634, P.C., declares that gambling houses and gambling paraphernalia are against public policy and are public nuisances, but if such are to be destroyed it must be done in the manner prescribed by the law.

The destruction of gaming devices, such as this, is a part of the penalty for the commission of a penal offense, and the provisions of law authorizing its infliction will be strictly construed. Irrespective of the anxiety of the officers to suppress crime, neither the peace officers nor the courts may read into the law anything not enacted by the law-making body.

Under the facts disclosed by this record, we do not believe there is any evidence of probative value to support the court's finding that the machines were being exhibited in Wichita County, Texas, for the purpose of obtaining bettors. It occurs to us that the uncontradicted evidence shows that the machines were locked in the small room described by the witnesses, under conditions which would seem obvious that they were not being exhibited for the purpose of procuring bettors. The only testimony referable to appellant consenting for any one to go in there is to the effect that he had instructed Mr. Hyatt, manager of the Town Club on that floor of the building, to permit nobody to enter the little room. Appellant and Mr. Hyatt are the only ones shown to have had a key to the room.

The fact that Mrs. Newlin entered the room and played the machines, at a time when she said no one knew it, certainly could not be construed as an exhibition or display by appellant of the machines. The fact that the machines had money in them (the amounts in all or either not shown) to our minds adds nothing to the contention of exhibit or display. Judging by the fact that Mrs. Newlin "won" $15 by operating one of the machines for so short a time is persuasive, we think, that appellant was not ready to exhibit and display his machines for the purpose of obtaining bettors.

As pointed out above, there was no competent testimony before the court that appellant intended to exhibit and display the machines in the Town Club, at the President's Birthday Ball, the next evening after the seizure, but even if he had so expressed himself and meant to do it, the offense had not been committed. We have no doubt that if the seizure had been made at a time when the machines were on display

and exhibition for the purpose of obtaining patrons and bettors, regardless of the motive that prompted such persons to patronize the games, a judgment of condemnation and destruction would have been sustained; but this would not follow merely because appellant contemplated committing an offense against the gaming laws.

In support of the judgment entered, the State cites and relies upon the statutes referred to by us and also cases of Moore v. Adams, Tex.Civ.App., 91 S.W.2d 447, and Houghton v. Fox, Sheriff, Tex.Civ. App., 93 S.W.2d 781, and authorities cited in each. Those cases are clearly distinguishable from the instant one. In those cases the machines were unquestionably exhibited for whatever purposes they were suited. The controlling issue in each was primarily whether or not they were gambling devices or merely instruments of amusement and for testing skill. There is nothing in this record to indicate that the seized machines were anything other than gaming devices, as found by the court.

■■ As pointed out above, this action is quasi criminal in its nature. It has for its purpose the infliction of one part of the penalty provided by law for keeping a gaming house; this is true because there is no other authority under the law for the condemnation and destruction of gambling paraphernalia except when seized by a peace officer in a gaming house, under the search warrant. To affirm this judgment there must be evidence to support a conviction for either one or the other of the offenses, of (1) keeping and exhibiting slot machines for the purpose of gaming (Art. 619, P.C.), and (2) keeping a gaming house, viz., a place where people resort to gamble. (Art. 625, P.C.). In criminal cases a person charged must be shown beyond a reasonable doubt to have committed the offense while in our civil procedure a fact need only be established by a preponderance of the evidence. An affirmance of this judgment would have two far-reaching effects. They are: (a) To uphold a conviction for a felony offense, based upon inferences, deductions and presumptions, which is to do violence to our rules of criminal procedure, and (b) an affirmance of this judgment would be giving judicial sanction to a conviction for a felony offense under rules of civil procedure, and might form the basis of an adjudicated fact in a subsequent criminal prosecution for keeping a gaming house. These are some of the reasons which have prompted us to apply a strict rather than a liberal rule of construction to the law applicable and the facts proved. We do not think the court was warranted in inferring or presuming that either of the felony offenses had been or were being committed, based upon the fact that neither Gray, Hyatt nor Featherstone testified in the case, nor upon a presumption that the door of the little room in which the slot machines were stored was left open by Gray after he paid the license fee. It is obvious that Hyatt thought the room was locked for as he approached the door with the officer, he took his keys out for the purpose of unlocking the door but found it unlocked at the time.

■ We are forced to the conclusion that under the various statutes cited and the constructions given them by the several courts and the testimony in this record, that the machines were not seized under the search warrant in a gaming house, as defined by law; that the machines were not being kept or exhibited at the time of the seizure for the purpose of obtaining bettors and that at the time of seizure the machines were not being used by any person with the knowledge or consent of appellant or the operators of the "Town Club", for betting or wagering. If we are correct in these things, the judgment condemning the machines and ordering them destroyed is erroneous; but the trial court should have released the equipment to appellant under his plea of intervention. For the reasons shown, the judgment is reversed and rendered for appellant, and the officer is directed to return the machines and their contents to appellant.

McDONALD, Chief Justice (dissenting).

Believing that the trial court was correct in ordering the destruction of the seven slot machines in question, and in ordering confiscation of the money found therein, I respectfully enter my dissent.

To begin with, I think it is clear that the room in which the machines were situated constituted a part of the premises occupied by the Town Club. The sheriff testified that he executed the search warrant at the Town Club. Mr. Hopson, the representative of the State Comptroller who collected the license fees on the machines, testified that he went to the Town Club on the occasion in question. Appellant in his

.brief states that the machines were seized in the Town Club. There is no testimony to the contrary, and no contention has been made by either party that the room was not a part of the Town Club quarters.

On the morning of January 29, 1943, Mr. Hopson went with appellant Gray to the Town Club, checked the serial numbers on the machines, received a check for $360 from Gray in payment of the license fees on the machines, and gave Gray a receipt therefor. This occurred just before noon. When Hopson and Gray arrived at the Town Club, the room containing the slot machines was locked. The evidence does not disclose whether the room was locked when they left. The evidence does show, however, that the room was unlocked when Mrs. Newlin went in to play the machines about three o'clock that afternoon. It is held in the majority opinion that the trial court did not admit in evidence the statement made by Gray that he was going to open up the machines the following night at the President's Birthday Ball, and I, too, incline to the view that the record before us shows that Gray's statement was not admitted in evidence, but appears in the statement of facts only by way of completion of a bill of exceptions. No complaint is made here of the exclusion of such statement.

The trial court found that the machines were being exhibited for the purpose of obtaining bettors at the time of their seizure. In testing this finding, we must consider only the evidence which tends to support it, and not that to the contrary. The evidence supporting such finding is that Gray was the owner of the machines; he carried a key to the room in which they were located and evidently had the right of access to the room; the machines were filled with money (there is evidence that it took $400 to fill the "jackpots"); Gray had paid a substantial sum, $360, for the license fees; the room was locked before the license fees were paid, but was found unlocked a few hours later; the machines were lined up against the wall, facing toward the center of the room; the room was small, but was large enough for a person to stand in front of each machine in order to play it; when the deputy sheriff arrived a woman was found playing the machines, coins fell out of it in the presence of the officer, and the woman testified that she won $15 on that occasion; Mrs. Newlin testified that she had played the machines once or twice before, and further testified

that she had also seen them in the bar room; and she was obviously evasive when questioned about seeing other people playing the machines upon other occasions. Under the testimony referred to, the trial court could hardly have found otherwise than he did. The machines were installed in the Club, the license fees had been paid, they had money in them, the room was unlocked, and they were in actual operation.

Let us see if the testimony to the contrary is of such nature as to overcome that which has been referred to. The owner of the machines did not testify, nor did he place anyone on the stand to explain the actual operation of the machines, other than Mrs. Newlin. The substance of her testimony, and I am unable to make more out of it, is that she wanted to play the machines that morning, and asked Mr. Hyatt, one of the operators of the Town Club, if she might do so. Mr. Hyatt told her that the room was locked, and no one was permitted to go in. She was asked if she was in the room with the knowledge and consent of Mr. Hyatt, or Mr. Featherstone, the other operator of the Club, or Mr. Gray, and replied in the negative. But when she went to the door of the room in the afternoon, after the license fees had been paid, she found it unlocked, she found the machines in readiness to be played, and she played them. The trial court could have readily inferred that the room was locked until the license fees were paid, and that then it was left open for the convenience and pleasure of those who might wish to play the machines.

Appellant Gray was the one person best able to explain the circumstances, which, to put it mildly, tended to show that his machines were being exhibited for the purpose of obtaining bettors. His failure to testify, under such conditions, raises a presumption against him. 17 Tex.Jur. 302-309.

Nor am I able to see that his position would be improved by showing that he had stated that he intended to open up the machines the following night. Under the circumstances described, even giving effect to such a declaration, he was keeping the machines for the purpose of obtaining bettors, had completed all of his arrangements, and had declared his purpose to exhibit the machines. Also, the trial court may not have believed Gray's statement insofar as it amounted, if it did, to a declaration that he did not intend to open up the machines until the following night, especially in view-

of Gray's failure to take the witness stand. Then, too, the court had before him Mrs. Newlin's testimony that she had played the machines before, and that she had seen them in the bar room.

I agree whole-heartedly with the finding of the trial court that the seven slot machines "are slot machines and gaming devices per se". It might be that a slot machine of this type could be used in such manner that it would not be a gambling device, but these seven machines had no such character of innocence. Appellant relies heavily upon Hightower v. State, Tex.Civ. App., 156 S.W.2d 327, in which it is said that a slot machine is not per se a gambling device. But it is also said there that the use to which it is put must determine its character. Appellant also relies upon Callison v. State, Tex.Civ.App., 146 S.W.2d 468, but there it is said that a gaming device is not subject to confiscation unless it be shown that the device is being used or exhibited in such manner as to signify the purpose of gaming. A dismantled slot machine might properly be treated as mere junk iron, and in no sense whatever a gambling device, but not so when it is set up for operation, with the license tax paid, full of money, and actually being played by one desiring to bet money. Nor do I see that it would be controlling that a machine be idle, for lack of customers, at the precise moment the officer might arrive with the search warrant. There was testimony from Mrs. Newlin that she had played these machines before, and that she had seen them in the bar room. Her testimony in this respect is none too clear, but neither is some of her other testimony.

The statutes, save for an amendment which is not material on this appeal, are part of a statute passed in 1907. The act evidences a clear purpose on the part of the Legislature to prohibit gambling and to provide for the condemnation of certain types of equipment used in connection therewith. I am unable to find from the language of the act a qualification that the property can be condemned only if it comes from an establishment which is devoted wholly or for the main part to gambling. It is my sincere belief that the purpose of the statute is to provide for the condemnation of gambling devices, whether they be found in grocery stores, drug stores, restaurants, or in what might commonly be called gambling houses, where the devices are being kept or exhibited for the purpose of obtaining bettors. And if it be necessary to restrict condemnation proceedings to devices found in gaming houses, then it is my opinion that any court would be warranted in viewing as a gaming house, for the purposes of such condemnation proceedings, the immediate area occupied by a slot machine in operation. According to Art. 631 of the Penal Code, a gambling or gaming house is any place where people resort for the purpose of gaming, betting or wagering. If the presence of the seven slot machines in the small room of the Town Club should have the effect doubtless hoped for by their owner and justified by the amount of money he had expended in preparation, it could reasonably be inferred that people would resort there for the purpose of gambling upon the machines.

It appears that the decisions of the courts in such cases have for the most part turned, not upon whether the machines came from what might be commonly known as gambling houses, but upon whether the machines were gambling devices, either by reason of their use or by reason of their nature. In addition to the cases cited in the majority opinion, see Prendergast v. State, 41 Tex.Cr.R. 358, 57 S.W. 850; Berry v. State, 106 Tex.Cr.R. 657, 294 S.W. 216; Mills v. Browning, Tex.Civ.App., 59 S.W.2d 219; Carpenter v. State, Tex.Civ. App., 89 S.W.2d 852; Houghton v. Fox, Tex.Civ.App., 93 S.W.2d 781; State v. Langford, Tex.Civ.App., 144 S.W.2d 448; Roberts v. Gossett, Tex.Civ.App., 88 S.W. 2d 507; Speed v. Keys, Tex.Civ.App., 110 S.W.2d 1245.

I believe that the judgment of the trial court has support in the evidence and the inferences which can be reasonably drawn therefrom.